Noel v. Fitzpatrick.

CASE 100.—ACTION OF EVA FITZPATRICK BY J. K. P. SOUTH
AGAINST S. M. NOEL TO CANCEL A COMMISSION-
ERS' DEED ISSUED TO THOMAS Y. FITZPATRICK.
—February 28.

# Noel v. Fitzpatrick

Appeal from Franklin Circuit Court.

ROBERT L. STOUT, Circuit Judge.

From the decree defendant appeals.    Reversed.

1. Trusts—Resulting Trust—Payment of Consideration for Con-
veyance to Another.—Where one who purchased at a commis-
sioner's sale and who paid the consideration caused the con-
veyance to be made to another, the grantee held the land in
trust for the purchaser.
2. Husband and Wife—Disabilities of Coverture—Contracts.—
Under the statute of 1894 (Acts 1894, p. 176, c. 76), providing
that a married woman may take, acquire, and hold property,
and that she may in her own name, as if unmarried, sell and
dispose of her personal property, a married woman who pur-
chased land at a commissioner's sale was under no disability
precluding her from assigning her bid and purchase to her
husband.
3. Witnesses—Competency—Transactions with Decedent.—In a
suit by the heirs of a married woman to set aside an assign-
ment made by her to her husband of her purchase and bid
at a commissioner's sale, the husband was incompetent to
testify concerning any verbal transactions between himself
and his deceased wife.
4. Judicial Sales—Title and Rights of Purchasers—Assignment of
Bid Sufficiency.—Civil Code Prac., sec. 398, provides that a
conveyance by a commissioner shall not pass any right until
it has been examined and approved by the court, which
approval shall be indorsed on the conveyance.    A purchaser
at a sale by a commissioner, after confirmation, filed in the
court a writing requesting that conveyance be made to
another.    Held, that such transaction was sufficient to pass

Noel v. Fitzpatrick.

the purchaser's interest, as the title to property sold at decretal sale does not pass to the purchaser until it is conveyed under proper order of the court; the purchaser's interest in the meantime being merely an equitable one.

B. G. WILLIAMS for appellant.

## POINTS AND AUTHORITIES.

1. Mrs. Fitzpatrick was never the real purchaser, but the announcement by her husband of Mrs. Fitzpatrick as the bidder under the facts shown in the record constituted her in law the agent of her husband. (Lyle v. Lyle's Adm'r, 4 Ky. Law Rep., 990; Brown v. Bristo, 7 Ky. Law Rep., 599.)

2. An order for a deed and the execution of such deed are necessary to pass the title. (Civil Code, secs. 396, 397 and 398; Dickerson's Heirs v. Talbot's Ex'rs, 14 B. Monroe, 59; Gill v. Hewett, 7 Bush, 10; Miller v. Hall and wife, 1 Bush, 229.)

3. The bid of Mrs. Fitzpatrick's was assignable. (Miller v. Hall and wife, 1 Bush, 229; Buford v. Buford, 1 Bibb, 305; Vangordor v. Lundy, 56 Iowa, 448; 65 Missouri, 315.)

4. Precedent to the Act of 1894, notes belonging to the wife if reduced to the husband's possession, were his, and he had the right to reduce them to his possession. (Wiggins v. Johnson, &c., 12 Ky. Law Rep., 276; Waldon v. Phillips, 86 Ky., 307.)

5. Husband entitled to receive wife's distributable share of decedent's estate. (Thompson's Adm'r v. Elam's Ex., 11 Ky. Law Rep., 455; 5 Dana, 475.)

6. A gift from wife to husband will be sustained. (Long v. Beard, 20 Ky. Law Rep., 1036; Stone and wife v. Werts, &c., 3 Bush, 486.)

7. Wife estopped. (Eckermeyer v. Hoffmeier, 98 Ky., 724.)

JOHN W. RAY for appellee.

## POINTS DISCUSSED.

1. The wife of T. Y. Fitzpatrick was the purchaser at judicial sale of 260 acres of land; the sale was confirmed to her; she gave an order for a deed to her husband; we contend the conveyance to him was void, or that he was a trustee for her. (Long v. White, 5 J. J. M., 227; Perry on Trusts, secs. 202, 203 and 204; Pomeroy Eq., vol. 2, secs. 1049, 1051 and 1053; Dickerson v. Godwise, 1 Sandfor, ch. 214 and cases cited.)

2. By the sale and confirmation to Mrs. Fitzpatrick the title to the land was in her, and she could not divest herself thereof by

the order. (Hughes v. Swope, 88 Ky., 254; Jones v. Biggstaff, 95 Ky., 395; Vance's Adm'r v. Foster & Ray, 9 Bush, 392.)

3. Appellant Noel was purchaser pendente lite, with full actual notice of all the facts and of this suit, and got all he paid for, that is, the life estate of T. Y. Fitzpatrick. He has no cause of complaint, except that Tom Fitzpatrick did not live longer, and cannot be remedied.

OPINION OF THE COURT BY JUDGE LASSING— Reversing.

In 1897, M. E. Trimble, trustee for Narcissa Fitzpatrick, brought suit against J. H. Bowen and others to foreclose a mortgage for the purpose of collecting $2,387.35, with interest from December 15, 1883. There was at the same time a prior lien upon the property sought to be sold adjudged to John A. Lewis for $2,250, with interest from November 15, 1894, and other inferior liens adjudged to M. E. Trimble, trustee. In due course of time a judgment was rendered directing the property to be sold by the master commissioner. At the commissioner's sale Thomas Y. Fitzpatrick bought the property, and announced at the time that he did so that his wife, Narcissa Fitzpatrick, was the bidder. A sale bond was prepared, and Fitzpatrick signed his wife's name by himself as attorney, and signed his own name thereunder as security for her. The sale was in due time confirmed. After confirmation Mrs. Fitzpatrick, by a writing, recited the fact that her husband, Thomas Y. Ftizpatrick, had paid the purchase price, and requested the court to make an order for a deed to be made to him. This writing was filed in the court, and thereafter the court by an order directed the master commissioner to convey the land to Thomas Y. Fitzpatrick, which was done. Shortly thereafter Fitzpatrick and his wife executed a mortgage on this land to the Safety Vault & Trust Com-

pany, of Frankfort, for the purpose of raising money thereon. The indorsement on the bond shows that Fitzpatrick paid to the master commissioner the Lewis debt in two checks, one for $1,325, and the other for $1,305.52. There is no evidence showing that that portion of the debt which was going to M. E. Trimble as trustee for Narcissa Fitzpatrick was paid at all. Narcissa Fitzpatrick died some time in 1900, and in 1904 Eva Fitzpatrick, daughter of Narcissa and Thomas Y. Fitzpatrick, by her next friend, J. K. P. South, filed her suit in the Franklin circuit court to cancel the deed from the master commissioner to her father, on the ground that the allegation in the assignment which her mother made to her father was false, in so far as it recited that the purchase price for the land had been paid by Thomas Y. Fitzpatrick. The petition further alleged that the assignment was obtained by reason of the confidential relation which existed between her father and mother as husband and wife; that her mother had no power or authority in law to execute such writing, and that the same when executed was void; that there was no consideration for the assignment, and that it was procured by fraud, and that her father concealed his true intent and purpose in procuring it; and that the deed executed in pursuance of the order of court directing it to be made to her father under said assignment was void. The first paragraph of the answer is a traverse. In the second paragraph Thomas Y. Fitzpatrick alleged that he was the actual purchaser of the land; that he had it cried down to his wife, who was not present, as the purchaser merely for convenience, and in order that he might become surety in the bonds. He denied that his wife paid any part of the purchase price, or caused any part thereof to be paid, and averred that

he prepared the assignment from his wife to himself, and that after she had executed it he presented the assignment in court, in order that he might have the deed made to himself as the real purchaser. A demurrer was filed to the second paragraph of this answer and sustained. Pending the litigation Eva Fitzpatrick reached her majority, and, this fact being made known to the court by proper proceeding, an order was entered directing that the suit proceed and be prosecuted by her in her own proper person, which was done. After the institution of the suit S. M. Noel, appellant here, purchased of Thomas Y. Fitzpatrick the farm in controversy for $8,000, $3,000 of which was paid in cash to said Fitzpatrick, and an obligation entered into by and between Noel and Fitzpatrick reciting that the remaining $5.000 was to be paid upon the settlement of the litigation. S. M. Noel, who by his purchase had succeeded to the rights and interest of Fitzpatrick in the land, filed his suit to be made a party. This was done, and his answer was taken as a cross-petition against the plaintiff, Eva Fitzpatrick. Noel adopted all the allegations of the answer of Thomas Y. Fitzpatrick. Shortly after this Fitzpatrick died. Issue having been joined, proof was taken, and upon final hearing the trial court adjudged that "the assignment from Narcissa Fitzpatrick to T. Y. Fitzpatrick, her husband, dated January 28, 1898, of her purchase of the land in contest, and described in the petition herein, that had theretofore been sold by the court's commissioner in the consolidated action of Crutcher & Starks, etc., v. J. H. Bowen, and the report of sale being made to Narcissa Fitzpatrick, purchaser, had been confirmed, was and is void, and conveyed to the said T. Y. Fitzpatrick, husband, no interest, right, or title in the lands so sold; and further adjudges that the deed

executed by the commissioner under orders of the court in the case of Crutcher & Starks and others against J. H. Bowen and others to T. Y. Fitzpatrick, dated January 28, 1898, was and is void and of no force and effect because the same was obtained by virtue of the assignment from Narcissa Fitzpatrick to her husband, T. Y. Fitzpatrick.'' And the court thereupon set aside and canceled and held for naught the deed from the master commissioner to Thomas Y. Fitzpatrick, and directed the commissioner to make a deed to Narcissa Fitzpatrick, effective as of the date of the deed to Thomas Y. Fitzpatrick, for the land sold and confirmed to her, and adjudged to plaintiff her costs. Thereafter the master commissioner, W. H. Posey, executed in due form a deed conveying the land to Narcissa Fitzpatrick as directed. From the correctness of the court's ruling and judgment, the defendant, Noel, prosecutes this appeal.

Two questions are raised for determination upon this appeal: First, should the demurrer have been sustained to the second paragraph of defendant's answer? and, second, was the assignment of her bid and purchase by Narcissa Fitzpatrick to her husband void?

We will first consider the ruling of the court on the demurrer. The allegation of the second paragraph is that Thomas Y. Fitzpatrick was the real purchaser at the sale, although the sale was reported as having been made to Narcissa Fitzpatrick. For the purposes of the demurrer, this allegation is admitted to be true. If, in fact, the husband was the real purchaser, then, even though the deed had been executed to the wife, she would have been holding the land in trust for her husband; and, if she refused to convey the land to him, upon a proper showing,

following the rule of this court laid down in the case
of Lisle v. Lisle's Adm'r, 4 Ky. Law Rep., 990, the
court would have directed the property to be con-
veyed to him. In the case of Brown v. Bristow, 7 Ky.
Law Rep., 599, this court said: "It appearing that
the purchase of land by appellees at judicial sale was
for appellant, and that she paid the sale bond, the
deed should have been made to her." Equity will
always interfere to see that the real purchaser—the
one who has paid the price—gets the property, in
the absence of any fraud, even though the bid at the
sale be taken in the name of another. We are of opin-
ion that the demurrer should have been overruled.

We come now to a consideration of the second
question in the case, which is: What force shall be
given to the assignment of the bid and purchase which
Narcissa Fitzpatrick executed and delivered to her
husband, and which was filed with the records in the
case in court by him, and upon which the court acted
in directing the commissioner to convey the land in
question to the husband? Prior to the passage of the
act of 1894 (Acts 1894, p. 176, c. 76) known as the
"Weissinger Act," a married woman had practically
no authority in law to deal with third persons, much
less with her husband. Her acts were void. It is
true that before the passage of this act, with the aid
and assistance of a court of equity, upon a showing
by her that her husband was confined in the peniten-
tiary, or had abandoned her, or was an incurable
lunatic, or utterly failed to provide a support for her,
the wife could be empowered to act as a feme sole;
or upon the joint application of the husband and wife,
upon a proper showing, the wife might be empowered
to transact business to a limited degree, as an unmar-
ried woman. It will be observed, however, that in
order to be empowered to act for herself at all it

was necessary that she should go into a court of
equity and, by proper pleading, expose the existence
of an unfortunate condition in her domestic affairs.
This was unpleasant and frequently embarrassing, to
such an extent that but few married women availed
themselves of the benefits of this privilege; and it
was not until the passage of the Weissinger act, in
1894, that married women were authorized to transact
business for themselves in a manner at all satis-
factory to them.  The act referred to is in the follow-
ing language: "A married woman may take, acquire
and hold property, real and personal, by gift, devise
or descent, or by purchase, and she may, in her own
name, as if she were unmarried sell and dispose of
her personal property.  She may make contracts, and
sue and be sued, as a single woman, except that she
may not make an executory contract to sell or convey
or mortgage her real estate, unless her husband join
in such contract; but she shall have the power and
right to rent out her real estate, and collect, receive
and recover in her own name the rents thereof, and
make contracts for the improvement thereof.  A gift,
transfer or assignment of personal property between
husband and wife shall not be valid as to third per-
sons, unless same be in writing, and acknowledged
and recorded as chattel mortgages are required by
law to be acknowledged and recorded; but the record-
ing of such writing shall not make valid any such gift,
transfer or assignment which is fraudulent or void-
able as to creditors or purchasers."  Giving to this
statute its literal construction, it does not prohibit
the wife from dealing with the husband, but only
provides the manner in which she may deal with him
as affecting her personal property so far as third
persons are concerned.  We take it that the Legisla-
ture intended that the wife should have all of the

rights of an unmarried woman in dealing with her property, saving and excepting those which it expressly denied to her. This being true, Narcissa Fitzpatrick had a perfect right to assign to her husband her bid and purchase of the land in question, in the manner in which she did, unless by the confirmation of the sale her title in the land had become perfected to such an extent that, in order to pass the title, it was necessary for her to sign and acknowledge a deed therefor. By the act of the auctioneer in declaring her the bidder at his sale and accepting her bond for the purchase price of the land sold, she acquired an equitable interest in the property, and this equitable interest or right in the property was perfected in her by the confirmation of the sale at a later date. But the title to property sold at decretal sale does not pass to the purchaser, nor is the purchaser vested therewith, until it is conveyed, under proper order of the court, by the commissioner of the court to the purchaser. Sections 396, 397, 398, of the Civil Code of Practice. Until it is so conveyed it remains but an equity—perfected, it is true, by the confirmation—in the purchaser; and, being but an equity, it is such an interest in, or right to, the property as can be transferred and assigned in the manner in which it was assigned in the case at bar.

Evidently, if the purchaser had been the husband, and the sale had been confirmed to him and thereafter he had transferred his bid and purchase to his wife in the same manner and form as his wife did to him, no question would be made as the regularity of the transaction or the validity of the assignment; and, as we have said, it was evidently the purpose of the legislators in passing the act of 1894 to give to the wife the right and privilege of dealing with her own property as though she were unmarried, subject to the

restrictions contained in the statute. This being true, the wife here had the right to assign her bid and purchase to her husband. The law does not require any greater degree of formality in the transfer of an equity by the wife to the husband than it would in the transfer of a like equity from the husband to the wife. The assignment recites that the purchase price was paid by Thomas Y. Fitzpatrick. At the date of the assignment all of the purchase money was not due, and the record shows that Fitzpatrick paid only that part of the purchase price which was due and going to John A. Lewis in satisfaction of his first lien on the land. No part of the money which was going to his wife, Narcissa Fitzpatrick, was paid by him, and, while she had a right to give her husband the money which was due her out of the sale of this land, had she desired to do so, still there is nothing in the record in this case to show that she intended to make a gift of this money to her husband, and, in the absence of such showing, we conclude that she did not intend to part with her right to receive the money due her out of the sale bonds. In order to support a gift of personalty from the wife to the husband, the proof must be clear and positive that the wife in making the gift fully understood the transaction, and was free from any undue influence or control of her husband growing out of their marital relation. On March 1, 1897, the date of the sale by the commissioner, the mortgage debt of Narcissa Fitzpatrick amounted to $4,281.31, and the debt of John A. Lewis, which was a superior lien, amounted to $2,559.37. The land brought at the sale $7,250, which was enough to satisfy both debts and costs. Narcissa Fitzpatrick died some time during the year 1900—the record does not disclose the exact date, and we presume she died intestate, as no mention is made

of any will left by her.   Thomas Y. Fitzpatrick, upon
the death of his wife, became the owner, by inheri-
tance, of one-half of her entire personal estate; the
remaining one-half passed, by the law of descent, to
her only child, the appellee herein, in the absence of
any   testamentary   disposition   thereof   by   her.
Included in the personal estate of his wife was this
claim of $4,281.31, with interest from March 1, 1897,
till the date of her death.   The record shows no evi-
dence of fraud or deceit practiced by the husband in
procuring the assignment from his wife of her bid
and purchase of the land in controversy.   This being
true, and she having the right to make the assign-
ment, her husband, upon the execution of the deed by
the master commissioner to him, became the owner
of the land in question, and, having sold and trans-
ferred it to appellant, S. M. Noel, the trial court
should have adjudged it to him, under the terms of
his purchase thereof from Thomas Y. Fitzpatrick.
Thomas Y. Fitzpatrick was not a competent witness
to testify concerning any verbal transaction between
himself and his deceased wife, and his testimony has
not been considered by us upon this appeal.   Upon
a return of this case to the trial court S. M. Noel will
pay to the master commissioner of the Franklin cir-
cuit court the remainder of the purchase money due
upon said land according to the terms of his purchase,
and, upon receipt thereof, the master commissioner
of the Franklin circuit court will execute a proper
release of the lien upon the record for the remainder
of the purchase money.   Out of the money so paid
into court by Noel one-half of the claim of Narcissa
Fitzpatrick, to-wit, one-half of $4,281.31, with interest
from March 1, 1897, will be paid to appellee, and the
remainder of funds in court, less the costs, will be
paid to the personal representative of Thomas Y.

Fitzpatrick. The trial court will set aside the order canceling the deed from the master commissioner to Thomas Y. Fitzpatrick, and also the order directing the master commissioner to convey the property described in this suit to Narcissa Fitzpatrick, and all other orders made by him in signing and approving the deed from the master commissioner to Narcissa Fitzpatrick, and he will enter an order canceling and holding for naught the deed from the master commissioner to Narcissa Fitzpatrick, and he will adjudge S. M. Noel the owner of the land in question under his purchase from Thomas Y. Fitzpatrick.

This case is reversed for the reasons indicated, and remanded to the trial court for further proceedings consistent with this opinion.