## Yutz v. Commonwealth Life Ins. Co.

(Decided March 3, 1936.)

SHACKLEFORD MILLER, JR., LOUIS BROWNSTEIN and HUGO TAUSTINE for appellant.

BATSON & CARY for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The action of the court sustaining a demurrer and dismissing the petition is to be reviewed.

The Commonwealth Life Insurance Company, on March 17, 1921, issued and delivered to William Yutz a policy insuring his life in the sum of $5,000 payable to Mary M. Yutz, his wife. The annual premium was $218.60, which he paid for a period of twelve years, up to March 17, 1933. On this date he executed four notes for the annual premium for the year beginning that date. One of them matured June 17, 1933.

It is alleged in the petition that the insured inquired of an agent of the insurer about this note and was advised that a grace period of thirty-one days would be allowed after June 17th, for its payment. Before the expiration of the thirty-one days, he tendered to the insurance company the amount of the note. It refused to accept payment and advised him the policy had been canceled for nonpayment of the premium which had matured March 17th, and he would have to make application for a reinstatement, which he did; but the insurer refused to reinstate the policy, and on the 8th day of July, 1933, mailed him a draft for $170 purporting to be the cash value of the policy over and above an existing loan against it. He cashed the check on July 29, 1933. His death occurred December 31, 1933.

The petition further alleges that for many years during the life of the policy the annual premium was customarily paid by installment notes; that a custom

had become established between him and the company for the payment of the annnual premium, and when the notes became due, it notified him, and customarily permitted him to pay the same after the due date; and that he had relied on this custom respecting the note due June 17, 1933.

It is averred that the insurer had in its hands at the date of the issuance of the $170 draft a dividend which he was entitled to have applied to the payment of the installment premium note falling due June 17, 1933, and that the dividend was sufficient in amount to keep the policy in force and effect until after the insured's death. It is also pleaded that at the time the $170 draft was remitted to, and accepted by him, he was not advised of his rights to extended insurance and to the dividend due him, and of his rights under section 659, Kentucky Statutes, in operation in 1921, which entitled him to the protection of his insurance, notwithstanding the provisions of the policy that it would be canceled because of his failure to pay the premium as per the terms of the policy.

The court sustained a demurrer to the petition. The beneficiary elected to stand by her petition. It was dismissed.

The insurance company is here insisting that the policy lapsed for nonpayment of the installment premium note which matured June 17th; the insured accepted the draft for the balance of the loan value in settlement of all his rights under the policy; and if in doing so error was made by him, such was, in law, a unilateral mistake of law or fact, neither of which is sufficient to afford the beneficiary a right to avoid the settlement. It asserts the policy which is filed as an exhibit to the petition contradicts the allegations of the petition, and when it is read in connection with the allegations of the petition, it controls, and, therefore, the petition fails to state facts sufficient to constitute a cause of action.

To sustain its several arguments, it cites and relies upon Commonwealth Life Ins. Co. v. Gault's Adm'r, 256 Ky. 625, 76 S. W. (2d) 618; Commonwealth Life Ins. Co. v. Leete, 224 Ky. 584, 6 S. W. (2d) 1057; Commonwealth Life Ins. Co. v. Haskins, 259 Ky. 780, 83 S. W. (2d) 457; Sheeran v. Irvin, 230 Ky. 307, 19

S. W. (2d) 976; Johnson v. Baker, 246 Ky. 604, 55 S. W. (2d) 404; 2nd Pomeroy Equity Jurisprudence (4th Ed. 1918) sec. 842.

The Gault Case was determined on the developed facts as they are stated in the opinion which are easily distinguishable from those alleged in the petition in the pending one. Aside from this, section 659 as it existed in 1921 was neither presented nor considered therein. The decisive question in that case was, the insured had assigned to the insurer the policy to pay a debt which he owed it, other than that commonly known as a "policy loan," and we ruled he was without right, therefore, to require the insurer to surrender its lien on the dividends existing by virtue of his assignment of the policy, for the purpose of paying the defaulted premium.

It is unequivocally alleged that Yutz' notes were executed and delivered by him and accepted by the insurer in actual payment of the annual premium for the year in which he died.

It is true that the policy stipulates:

"If any premium, or note given therefor, be not paid when due, this policy is null and void, subject to the nonforfeiture provisions in the tables hereon."

This stipulation did not require Yutz to pay the premium in cash, but expressly conveys the thought that the same might be paid by note. If the allegations of the petition are true and the same must be so accepted on the demurrer, such acceptance of the notes constituted a payment. American National Ins. Co. v. Brown, 179 Ky. 711, 201 S. W. 326; Commonwealth Life Ins. Co. v. Leete, supra; Inter-Southern Life Ins. Co. v. Duff et al., 184 Ky. 227, 211 S. W. 738; Fidelity Mut. Life Ins. Co. v. Hembree, 240 Ky. 97, 41 S. W. (2d) 649. Also, if its habit of business, or if it were its custom, to receive overdue payments of the premium notes without objection, or it did not exact prompt payment of them, or by any course of conduct it had induced Yutz into an honest belief that strict compliance with the stipulation of the policy exacting punctual payment of the premium notes would not be insisted upon by it, either was sufficient to constitute a waiver of the right to cancel the policy, or of the claim of forfeiture, and

an estoppel from enforcing the provision of the policy respecting punctual payment of the premium. Joyce on Insurance, sec. 1356; Cheatham v. Home Ins. Co. of New Yerk, 185 Ky. 494, 215 S. W. 281; German Ins. Co. v. Miller, 11 Ky. Law Rep. 721; Hoover v. Hartford Fire Ins. Co., 227 Ky. 88, 11 S. W. (2d) 976; United States Fid. & Guar. Co. v. Miller, 237 Ky. 43, 34 S. W. (2d) 938, 76 A. L. R. 12; Henry Clay Fire Ins. Co. v. Grayson County State Bank, 239 Ky. 239, 39 S. W. (2d) 482.

The alleged acts of the insurer canceling the policy and notifying him that it was canceled because of the nonpayment of the installment note due June 17th, relieved him of the duty to tender a subsequent payment of that particular note, as well as a subsequent tender of the other installment premium notes as they became due. Inter-Southern Life Ins. Co. v. Duff et al., supra.

Accepting the allegations of the petition as true respecting the payment of the permium for the year commencing June 17, 1933, the year in which his death occurred, the premium was paid by him for that year by the insurer's acceptance of his notes for the premium without contemplating a release or discharge otherwise than by payment constituted a satisfaction of the premium covered thereby. Hence, at the time it did so, the insurer was without right to cancel the policy and remit to him the draft for $170 (Fidelity Mutual Life Insurance Co. v. Hembree, supra), and its so doing was ineffectual, as to his rights under the policy. If the premium for that year was in reality paid by an unconditional acceptance of the notes, he had a vested right to extended insurance and was entitled thereto without demand or act on his part, which was not lost to him by the act of the insurer attempting to cancel the policy. New York Life Ins. Co. v. Van Meter's Adm'r, 137 Ky. 4, 121 S. W. 438, 136 Am. St. Rep. 282. Also, under the rule that accord and satisfaction applies only in case the amount due is in dispute or unliquidated, the acceptance by him of the $170—an amount less than due as per the terms of his policy—did not constitute accord and satisfaction, since at that time, according to the allegations of his petition, a dividend was due him as per the terms of the policy. See New York Life Ins. Co. v. Van Meter's

Adm'r, supra. If a dividend had been earned, at the date of cancellation, on default of the payment of the premium, he was entitled to the dividend. Emig's Adm'r v. Mutual Benefit Life Ins. Co., 127 Ky. 588, 106 S. W. 230, 32 Ky. Law Rep. 484, 23 L. R. A. (N. S.) 828. Leaving this aside, it is alleged in the petition that at the time the insured accepted and cashed the $170 draft, he was ignorant of the existence of the dividend due him and of his rights under section 659, Kentucky Statutes. If there were due him a dividend at the time of his accepting and cashing the $170 draft, his doing so did not absolve it of its entire obligation.

The alleged ignorance of his rights brings his rights, under the policy, within the rule:

> "Where one releases a claim in ignorance of the existence of a right, as where by mistake one assumes a debt due him to be smaller than it is, he is not estopped from collecting the balance. * * * It is like the payment made by the company in New York Life Insurance Co. v. Van Meter's Adm'r, 137 Ky. 4, 121 S. W. 438, 136 Am. St. Rep. 282, in settlement of a cash value of a life insurance contract of a sum much less than the value fixed by the policy. There was nothing in dispute."

Horn v. Atlas Assur. Soc., 241 Ky. 226, 43 S. W. (2d) 675, 678.

The insurer's insistence that Yutz' accepting and cashing the $170 draft was a unilateral mistake of law and fact and cannot be the basis of a recovery is unsound. A like contention was presented and determined adversely to its inistence in the recent case of Kentucky West Virginia Gas Co. v. Preece, 260 Ky. 601, 86 S. W. (2d) 163. Sheeran v. Irvin and Johnson v. Baker, supra, cited and relied on by the insured on this question are in harmony with Kentucky West Virginia Gas Co. v. Preece. The distinction between those cases and this one is factual, and not in principle.

The accepted rule is, a statutory provision governing life insurance policies in force at the time of the issuance of the policy must be read as if the statute were written in the policy [Horn v. Atlas Assurance Soc., 241 Ky. 226, 43 S. W. (2d) 675; Inter-Southern Life Ins. Co. v. Omer, 238 Ky. 790, 38 S. W. (2d)

931; Germania Ins. Co. v. Ashby, 112 Ky. 303, 65 S. W. 611, 23 Ky. Law Rep. 1564, 99 Am. St. Rep. 295; Prudential Ins. Co. of America v. Ragan, 184 Ky. 359, 212 S. W. 123; Mutual Benefit Life Ins. Co. v. O'Brian, 144 Ky. 308, 138 S. W. 245], and where there is a conflict between the provisions of the policy and the statute, the latter is paramount and must prevail when determining the right of the insured and the liability of the insurer.

Section 659 in force in 1921—the date of the issuance of Yutz' policy—provides:

"No policy of life or endowment insurance upon the ordinary plan hereafter issued by any domestic life insurance company shall become forfeit or void, for nonpayment of premiums, after three full years' premiums, in cash, have been paid thereon; but, in case of default in the payment of any premium thereafter, then, without any further stipulation or act, except, as herein provided, such policy shall be binding upon the company for the amount of paid-up insurance, which, according to the company's published tables of single premiums, the net value of the policy on such anniversary, and all dividend additions thereon, computed by the rule of sec. 116 of the act, to which this is amendatory, and which is sec. 653, Kentucky Statutes, will purchase as a net single premium for life or endowment insurance maturing and terminating at the time and in the manner provided in the original policy: * * * Provided, however, That any company may contract with its policyholders to furnish, in lieu of the paid-up insurance provided for in this section, any other form of life insurance lawful in this commonwealth, of not less value. * * * Any condition or stipulation in the policy of insurance, or elsewhere, contrary to the provisions of this section, and any waiver of such provisions by the assured, shall be void."

The Statutes, supra, forbid the forfeiture or cancellation of an insurance policy of this nature and kind under consideration herein, after three premiums have been paid thereon, and plainly provide that the loan or cash surrender value, if any, shall be applied to extended insurance."

Commonwealth Life Ins. Co. v. Haskins, 259 Ky. 780, 83 S. W. (2d) 457, 458.

If the accepting and cashing the $170 draft be considered as a waiver of the provisions of the policy, such act of waiver as to Yutz was void under the statutes. Considering the insurer's obligation to Yutz, under the above statute, it must be conceded that even though no dividend was due him, and the installment notes were not delivered or accepted in payment of the premium due for the year commencing June 17, 1933, the $170 left after deducting the policy loan from the cash surrender value was adequate to continue in force the policy until after his death.

> "It is an accepted rule: 'If an insurer is indebted to an insured, and has, or should have, in its hands, sufficient funds belonging to and due him, to pay an assessment or a premium when due, it cannot forfeit its policy or certificate for non-payment; rather, it should appropriate such funds to prevent a forfeiture, no matter from what source such funds were derived.'"

Commonwealth Life Ins. Co. v. Gault's Adm'r, 256 Ky. 625, 76 S. W. (2d) 618, 620. This principle is applicable to the facts alleged in the petition. The insurer, admittedly, was indebted to Yutz the $170. Under the statute, "without any further stipulation or act," on his part, it should have applied the $170 and the earned dividend, if any, as a net single premium for the purpose of keeping alive the policy for the period of time for which the $170 and the earned dividend would have paid it.

The company's acts of canceling the policy, remitting the $170 draft, and his acts of accepting and cashing it, considering the allegations of the petition, were void within the purview of the statute and did not operate to bar the beneficiary's recovery on the policy. Commonwealth Life Ins. Co. v. Haskins, supra.

The court erred in sustaining the demurrer to the petition.

The judgment is reversed for proceedings consistent herewith.