**Louise JOHNS, Appellant,**

v.

**Virginia G. KUBAUGH, Appellee.**

Court of Appeals of Kentucky.

Feb. 6, 1970.

G. Phillip Deeb, Sr., Deeb, Schaefer & Lohman, Louisville, for appellant.

J. Walter Clements, I. G. Spencer, Jr., Louisville, for appellee.

DAVIS, Commissioner.

Louise Johns sued Virginia G. Kubaugh seeking damages for personal injuries allegedly sustained by her in an automobile accident said to have been negligently caused by Miss Kubaugh. The trial court entered summary judgment dismissing the complaint upon the plea that Mrs. Johns had executed a full release of all claims arising out of the accident in consideration of $32.60 paid to her by the liability insurance carrier of Miss Kubaugh. On this appeal Mrs. Johns contends that the trial court erred in granting summary judgment in the circumstances to be more fully discussed.

The accident giving rise to this litigation occurred on July 22, 1967. By all accounts the force of the impact between the vehicles was extremely slight. No report of the accident was made to the Department of Public Safety by either of the persons involved in the accident or anyone else. KRS 189.580(2) directs that the operator of a vehicle involved in an accident resulting in injury to or death of any person or in which total property damage of $100 or

more is sustained file a report of the matter in writing to the Department of Public Safety within ten days.

It appears that Mrs. Johns communicated by telephone with the liability insurance carrier for Miss Kubaugh. In due course a form "Claimant's Report of Accident" was mailed to Mrs. Johns by that insurance company. Mrs. Johns completed the form, doing the typing herself, and returned it by mail to the company. In that report Mrs. Johns noted that the damage to her automobile occasioned by the accident amounted to $32.60. In answer to a question in the report, "Did you report to police?" Mrs. Johns replied, "No, too minor." The space provided for reply to the question, "Was anyone injured?" was left blank on the report form completed by Mrs. Johns. In response to the report which Mrs. Johns completed, the insurance company mailed her its draft in the sum of $32.60. On the reverse side of the draft above the space provided for endorsement of the draft was printed a formal "Release and Endorsement." In pertinent part the printed release provided:

"* * * I the undersigned, being of lawful age, do hereby release, acquit and forever discharge [Miss Kubaugh] of and from any and all actions, causes of action, claims, demands, costs, loss of services, expenses and compensation on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage resulting or to result from an accident that occurred on [July 22, 1967]. It is further understood that this payment is for the purpose of compromise only and is in no way an admission of liability on the part of [Miss Kubaugh] and it is the sole consideration for this release, and that the terms of this release are contractual and not a mere recital."

In a bolder, fully capitalized print, immediately above the space provided for signature of the endorser, appeared the legend: "THIS IS A FULL RELEASE—READ BEFORE SIGNING." Observation of a photostatic copy of the release and Mrs. Johns' signature discloses that handwritten portions of her signature overlap the caveat just quoted. The release was signed by Mrs. Johns on August 15, 1967, and she received the $32.60 in due course.

On January 4, 1968, Mrs. Johns filed her damage suit seeking recovery for personal injuries. On January 22, 1968, Miss Kubaugh filed answer denying the affirmative allegations of the complaint and affirmatively pleading in bar the release executed by Mrs. Johns. So far as appears of record, no other pleading or motion of any kind was filed by either party for more than a year. On February 3, 1969, Miss Kubaugh *served* a motion for summary judgment, but that motion was not filed in court until February 7, 1969. The motion for summary judgment asserted Miss Kubaugh's entitlement to judgment as a matter of law on the basis of the "full release." Mrs. Johns filed a response to the motion for summary judgment on February 5, 1969, reciting:

"There is a genuine issue as to the material fact concerning whether or not the Plaintiff has a claim * * * and the Plaintiff, by way of depositions, is entitled to go to the jury on this question.

"The full release referred to by Counsel for the Defendant, was a release for property damages only and contained no payment nor settlement of the personal injury claims asserted by the Plaintiff."

No evidentiary material supporting the response was filed with it, although reference was had to depositions which had been filed in the case.

There were only two depositions filed, each being a discovery deposition in which the adverse party was cross-examined. During the course of her deposition, Mrs. Johns said that she had had some "low

back pain" shortly after the accident and had consulted a doctor about it within the week following the accident. This pain and consultation with the doctor occurred before Mrs. Johns completed the report of claim and accepted the draft containing the release form. Mrs. Johns said that she did not read the release printed on the reverse side of the draft, and rather equivocally stated that she did not note the bold, printed warning that the release was a full one and should be read before signing. In the sixty-one pages of her deposition, Mrs. Johns did not assert that anyone had misrepresented anything to her about the matter of release, although she insisted that she always considered that she was merely releasing her property claim without prejudice to her claim for personal injuries.

The motion for summary judgment in behalf of Miss Kubaugh was noticed for hearing on February 14, 1969. On February 21, 1969, the court entered summary judgment dismissing the complaint on the ground that the release was a complete bar to the accident and no genuine issue existed as to any material fact in that respect.

On February 21, 1969, the date of entry of summary judgment, and after its entry so far as the record before us indicates, Mrs. Johns moved the court to enter an order in words and figures:

> "Motion having been made, and the court being sufficiently advised, of the tender of $32.60, by certified check by the Plaintiff, it is ordered that the release obtained by the insurer is set aside and held for naught."

In support of that motion was filed the affidavit of Mrs. Johns in which for the first time it was asserted that Mrs. Johns "was told by the adjuster that this would only settle her property damage and she so believed." The affidavit contained the further recitation:

> "The affiant further states that the insurance adjuster did conceal from the

Plaintiff the fact that if she accepted the money for her property damage that she *might* be releasing the insurer of all personal injury claims."

The trial court declined to enter the order requested by Mrs. Johns and noted on February 21, 1969, that the motion to set aside the release was overruled.

The thrust of appellant's argument is that the release clearly encompassed only the property claim, since its amount was exactly the same as the property claim. She contends that both she and the appellee were acting under mutual mistake in believing that her injuries were minor at the time of the release when, in fact, they later were learned to be of a more substantial nature. (In her deposition Mrs. Johns stated that she had had two necessary hospitalizations by reason of injury to her back sustained in the accident and that her heart muscles had been impaired by the accident.)

■ The appellee cites Clark v. Brewer, Ky., 329 S.W.2d 384, the facts of which are strikingly similar to those at bar. In Clark this court upheld a summary judgment in behalf of the defendant in face of the plaintiff's claim of mutual mistake in execution of the full release. Clark admitted that he had not read the release, but insisted that since the payment was exactly in the amount of the property damage he "knew" that the release was just for property damage. The court pointed out that the person who signs without reading and who does so without inducement, either to sign or not to read, cannot:

> " * * * shelter under a claim of mistake. He is not truly mistaken in the content. He has simply made no effort to ascertain it." Id. 329 S.W.2d at 386.

The only possible distinction between the case before us and Clark v. Brewer, supra, is in the belated affidavit in which Mrs. Johns asserted that the adjuster told her that only the property damage would be

settled and concealed from her that she "might be releasing the insurer of all personal injury claims." As to any concealment, the face of the record flatly refutes the claim of Mrs. Johns because the release unmistakably purports to include claims for personal injuries, known and unknown. In bold letters Mrs. Johns was admonished that she was signing a full release and that she should read it before she signed it. In face of the clear language of the release, considered with the fact that Mrs. Johns did not then regard herself as having any claim for personal injury, it is difficult to perceive how she could rely on a purported statement of an adjuster flatly contradicting the plainly stated terms of the release. However, orderly procedure requires that there must be some date after which the court will not permit additional evidentiary material. Generally, the "hearing" date is regarded as the cut-off time for filing additional evidentiary material in summary-judgment proceedings. See Neal v. Welker, Ky., 426 S.W.2d 476; Conley v. Hall, Ky., 395 S.W.2d 575; Mills v. Reserve Life Insurance Company, Ky., 335 S.W.2d 955. The somewhat nebulous evidentiary material in the untimely affidavit was offered after the hearing and even after the judgment. This untimely offering of the material was too late to avail as a bar to summary judgment.

It should be noted that the matter of attacking a release is one which must be affirmatively and seasonably pleaded. Toppass v. Perkins' Adm'x, 268 Ky. 186, 104 S. W.2d 423; First National Bank of Mayfield v. Stahr, Ky., 329 S.W.2d 582. In the case before us Mrs. Johns never did formally plead affirmative facts charging the invalidity of the release. Her tender of the money she received with the release was not made seasonably, nor was the motion to set aside the release timely; hence, the trial court correctly granted summary judgment.

The judgment is affirmed.

All concur.